UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GARY BULLARD                    ]
    Petitioner,                 ]
                                ]
v.                              ]        No. 3:13-0070
                                ]        Judge Campbell
DAVID A. SEXTON, WARDEN         ]
    Respondent.                 ]

**M E M O R A N D U M**

The petitioner, proceeding *pro se*, is an inmate at the Northeast Correctional Complex in Mountain City, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against David Sexton, Warden of the facility, seeking a writ of habeas corpus.

### I. Background

In October, 2007, a jury in Rutherford County found the petitioner guilty of aggravated assault and attempted aggravated rape. Docket Entry No.22-1 at pg.44. For these crimes, he received consecutive sentences of eight years and fifteen (15) years in prison, respectively. Docket Entry No.22-4 at pgs.183-184.

On direct appeal, the petitioner argued that the evidence was insufficient to support the convictions. Docket Entry No.22-8 at pgs.12-19. The Tennessee Court of Criminal Appeals rejected this argument and affirmed the convictions. *Id.* at pgs.45-53.

1

The petitioner then filed a *pro se* petition for state post-conviction relief in the Circuit Court of Rutherford County. Docket Entry No.22-9 at pgs.4-24. Following the appointment of counsel and an evidentiary hearing, the trial court denied the petitioner post-conviction relief. *Id.* at pgs.37-41.

On appeal, the petitioner claimed that he had been denied the effective assistance of trial counsel. Docket Entry No.22-11 at pgs.12-15. The Tennessee Court of Criminal Appeals found that counsel had been effective and affirmed the denial of post-conviction relief. *Id.* at pgs.52-57. The Tennessee Supreme Court later denied petitioner's application for further post-conviction review. *Id.* at pg.73.

## II. Procedural History

On January 11, 2013, the petitioner initiated the instant action with the *pro se* filing of a petition (Docket Entry No.1) for writ of habeas corpus. In the petition, the petitioner sets forth five claims for relief. These claims include :

1) the evidence was insufficient to sustain a conviction for aggravated assault because there was no use of a deadly weapon or serious bodily injury shown;

2) the evidence was insufficient to support a conviction for attempted aggravated rape because there was no proof of intent to rape the victim;

3) the petitioner was denied the effective assistance of counsel when his attorney neglected to cross examine the victim;

2

> 4) the petitioner was denied the effective assistance of counsel because his attorney failed to cross examine the investigating officer as to why he didn't initially charge the petitioner with an attempted aggravated rape;[1] and
>
> 5) the petitioner was denied the effective assistance of counsel when his attorney failed to "offer any proof in defense".[2]

Upon its receipt, the Court reviewed the petition and determined that the petitioner had stated a colorable claim for relief. Accordingly, an order (Docket Entry No.9) was entered directing the respondent to file an answer, plead or otherwise respond to the petition.

Presently before the Court is the respondent's Answer (Docket Entry No.21), to which the petitioner has offered no reply. Having carefully considered the petition, respondent's Answer, and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Smith v. United States of America, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

---

[1] At trial, the petitioner was represented by Jerry Farmer, a member of the Rutherford County Bar.

[2] The petitioner states that he is challenging counsel's representation only as it pertains to the attempted aggravated rape charge. Docket Entry No.2 at pg.21.

3

Case 3:13-cv-00070   Document 23   Filed 03/27/13   Page 3 of 13 PageID #: 999

### III. Analysis of the Claims

It appears from the record, and the respondent concedes, that the petitioner has fully exhausted his federal habeas claims in the state courts prior to bringing them here for review. Docket Entry No.21 at pg.2.

The availability of federal habeas corpus relief is limited with respect to claims that have been previously adjudicated on the merits in state court. Harrington v. Richter, 131 S.Ct. 770,780 (2011). When claims have been adjudicated on the merits in state court, as was the case here, the state court adjudication of those claims will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. Lundgren v. Mitchell, 440 F.3d 754,762 (6th Cir.2006), *citing* Williams v. Taylor, 529 U.S. 362,413 (2000). To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the

4

correct governing legal principle involved but unreasonably applied that principle to the facts of the case. *Id.* In short, state court judgments must be upheld unless the Court finds that the state court's application of federal law was "objectively unreasonable", rather than simply incorrect. Goodell v. Williams, 643 F.3d 490,495 (6th Cir.2011). In order to find that a state court's application of federal law was unreasonable, the Court must be convinced that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." Harrington, *supra* at 131 S.Ct. 786.

**1.) Sufficiency of the Evidence**

The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307,316 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.,* at pg.319. The only question this Court need answer "is whether that finding was so unsupportable as to fall below the threshold of bare rationality." Cavazos v. Smith, 132 S.Ct. 2,4 (2011).

5

Teresa Yearick was the victim in this case. The petitioner is her brother. Docket Entry No.22-3 at pg.7. According to testimony from the trial, an argument broke out between them when Teresa was unable to repay the petitioner for a television he had bought for her. *Id.* at pg.15. The petitioner became so enraged at his sister's inability to repay him that he went to her bedroom, retrieved the television and threw it out the front door onto the stoop. *Id.* at pgs.15-16.

When Teresa threatened to call the police, the petitioner took a hammer outside and began to strike the windshield of her car with it. *Id.* at pg.16. He went back into the house and grabbed the victim by her hair. The petitioner then started punching her in the face and slammed her head into the wall. *Id.* at pgs.16-17. He choked Teresa so hard that her eyes began to bleed. *Id.* at pg.17.

The victim tried to get to the bathroom for safety but the petitioner caught up with her. Teresa remembered the petitioner beating her head against the linoleum floor in the bathroom. *Id.* She managed to reach the bath tub when the petitioner grabbed a container of liquid detergent and started pouring it over her head and in her eyes. He tried to make Teresa drink the detergent. *Id.* The petitioner then urinated on his sister. *Id.* at pgs.17-18.

The petitioner stripped naked and got into the shower. He demanded that the victim remove her clothes as well. When she had removed everything but her bra, the petitioner yelled at her to

6

shut the bathroom door and join him in the shower. *Id.* at pg.18. She feigned compliance but fled from the house and ran across the street where neighbors took her in and called the police. *Id.*

Neighbors confirmed seeing the victim run across the street wearing only a bra. Docket Entry No.22-2 at pgs.116-117. They told police that "She had like laundry detergent dripping from her all over her body. Her hair was like really soaked. She looked really all beat up. One side of her face was swollen." *Id.* at pg.110. The first police officer on the scene noticed a damaged television on the stoop and a car in the driveway with a cracked windshield. Docket Entry No.22-3 at pgs.31-32. As police approached the house, the petitioner came out onto the porch wearing only an unbuttoned shirt and underwear. "He appeared to be wet or sweating profusely." *Id.* at pg.32. Police entered the house and noticed the living room was in disarray. In the bathroom, there was blue liquid on the floor along with strands of hair. Officers found the victim's cell phone in the toilet and an empty detergent bottle on the floor. *Id.* at pgs.34-35.

The victim was taken to the hospital and was released later that evening. Teresa's injuries included bruises and scratches on her arms, both eyes swollen, a broken nose, and permanent damage to her vision (brown splotches). *Id.* at pgs.24-26. Teresa took a week off from work and when she returned, three co-workers "had to turn their face and look away because I looked so bad." *Id.* at pgs.26-

7

27.

In his first claim, the petitioner asserts that there was insufficient evidence to find him guilty of aggravated assault because there was no showing of a deadly weapon being used or serious bodily injury to the victim (Claim No.1).

An individual in Tennessee commits aggravated assault when he intentionally, knowingly or recklessly causes serious bodily injury to another or uses or displays a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1). In his petition, the petitioner concedes that he assaulted the victim. Docket Entry No.1 at pg.5. Petitioner's claim, therefore, rests on whether he caused his sister serious bodily injury or used or displayed a deadly weapon in assaulting her.

The state courts found, and this Court agrees, that a deadly weapon was not used during the assault. Docket Entry No.22-8 at pg.49. Thus, petitioner's claim has merit only if there was no evidence to suggest that the victim suffered a serious bodily injury during the attack.

Tennessee law defines serious bodily injury as an injury that involves (1) a substantial risk of death, (2) protracted unconsciousness, (3) extreme physical pain, (4) protracted or obvious disfigurement, or (5) protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. Tenn. Code Ann. § 39-11-106(34).

8

The state courts concluded that there was evidence sufficient to show that the victim had been seriously injured by the petitioner. Docket Entry No.22-8 at pg.49. This Court agrees with that assessment of the evidence. From the testimony given at trial, a jury could have easily found that the victim suffered a serious bodily injury as a result of the extreme physical pain suffered from being punched in the face and having her head slammed into a wall and the bathroom floor, the permanent damage the victim sustained to her eye, and the disfigurement that the victim's co-workers witnessed when she returned to work after the assault. As a consequence, the Court finds no merit in this claim.

The petitioner next argues that the evidence was insufficient to support his conviction for attempted aggravated rape (Claim No.2).

In Tennessee, aggravated rape is the unlawful sexual penetration of a victim by the defendant accompanied by any of the following circumstances .... where "the defendant causes bodily injury to the victim." Tenn. Code Ann. § 39-13-502(a)(2). "Sexual penetration" is defined as any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim .... but emission of semen is not required. Tenn. Code Ann. § 39-13-501. To prove attempted aggravated rape, the prosecution was obliged to convince the jury that the petitioner's conduct constituted a substantial step toward the

9

commission of aggravated rape and that he acted intending to commit aggravated rape. Tenn. Code Ann. § 39-12-101(a)(3).

The evidence shows that the petitioner inflicted serious bodily harm upon his sister. As her condition weakened, he disrobed and commanded her to do so as well. The petitioner stepped into the shower and ordered the victim to close the bathroom door and join him. Given the petitioner's nakedness, his desire that the bathroom door be closed for privacy, and that the victim disrobe and join him in the shower, the state courts did not offend federal law by finding that the petitioner had intended to commit an aggravated rape of his sister and that he had taken a substantial step toward that end. As a consequence, petitioner's claim that the evidence was insufficient to sustain a conviction for attempted aggravated rape lacks merit.

## 2.) Ineffective Assistance of Counsel

The petitioner's final claims question the effectiveness of counsel. More specifically, he asserts that counsel was ineffective for neglecting to cross examine the victim (Claim No.3), failing to cross examine the investigating police officer as to why the petitioner was not initially charged with attempted aggravated rape (Claim No.4), and for failing to offer any proof on behalf of the petitioner (Claim No.5).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. McMann v.

10

Richardson, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance fell below an objective standard of reasonableness and that the defense was prejudiced as a result of the deficiency. Carter v. Bell, 218 F.3d 581,591 (6th Cir.2000), *citing* Strickland v. Washington, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Mallett v. United States, 334 F.3d 491, 497 (6th Cir. 2003).

At the post-conviction evidentiary hearing, petitioner's attorney testified that the defense strategy was "to beat the attempted aggravated rape charge". Docket Entry No.22-10 at pg.23. When the victim never mentioned rape during direct examination, Docket Entry No.22-3 at pgs.1-27, counsel chose not to cross examine her and give the victim an opportunity to tell the jury that her brother intended to rape her. Docket Entry No.22-10 at pg.24. He explained that the decision was strategic and was meant to bolster the petitioner's position that he never intended to rape his sister. *Id.* at pg.10. Counsel recalled discussing this decision with the petitioner and "he went along with my advice at the time."

11

*Id.* at pg.11.

In preparation for trial, counsel testified that he reviewed the investigating officer's report and that he spoke with both the petitioner's father and girlfriend to determine whether their testimony could help the defense. *Id.* at pgs.14-17. Counsel felt that neither the father nor the girlfriend would have added anything of benefit to the defense. He also decided that the petitioner should not testify because "he had problems controlling his anger". *Id.* at pg.12. Counsel further recalled that "Mr. Bullard had given me several different versions of the story prior to trial", and counsel was sensitive to the possibility of perjury. *Id.* at pg.22.

The petitioner also testified at the post-conviction evidentiary hearing. He recalled discussing defense strategy with his attorney. *Id.* at pg.32. Petitioner wanted counsel to call his father and girlfriend as witnesses because they could describe for the jury the victim's manipulative nature. *Id.* at pg.34. He felt that such testimony could have, in some way, justified his attack upon the victim. The petitioner did admit, though, "Yeah, that's true. I beat her up. Yeah, I yanked the hair out of her head. Yeah, I smacked her around. Yeah, I threw laundry detergent on her." *Id.* at pg.51.

The petitioner has failed to show how counsel's cross examination of the victim would have altered the jury's verdict in

12

this case. Nor has he explained what evidence could have been presented on his behalf that might have led the jury to a different result. The petitioner, therefore, has failed to prove that he was prejudiced in any way by counsel's alleged deficiencies. Thus, the state courts properly ruled that the petitioner had not been denied the effective assistance of counsel.

## IV. CONCLUSION

The state courts determined that the petitioner's fully exhausted claims lacked merit. The record supports these findings. The petitioner has failed to rebut the presumption of correctness accorded to the findings of fact made by the state courts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor has he shown in what way the legal conclusions made by the state courts with respect to his claims are either contrary to or an unreasonable application of federal law. Consequently, petitioner's claims are insufficient to support an award of habeas corpus relief.

An appropriate order will be entered.

_____
Todd Campbell
United States District Judge